

**FILED & ENTERED**

**MAY 25 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:   Morad Javedanfar and Yaffa Javedanfar, Debtors | Case No.:   2:13-bk-27702-ER<br>Adv. No.:   2:15-ap-01363-ER |
| JL AM Plus, LLC,<br><br>Plaintiff<br><br>v.<br><br>Morad Neman and MBN Real Estate Investments, LLC,<br><br>Defendants | **MEMORANDUM OF DECISION FINDING THAT DEFENDANT MORAD NEMAN IS ENTITLED TO SUMMARY JUDGMENT IN HIS FAVOR**<br><br>Date:     May 24, 2017<br>Time:    10:00 a.m.<br>Location: Ctrm. 1568<br>Roybal Federal Building<br>255 East Temple Street<br>Los Angeles, CA 90012 |

At the above-captioned date and time, the Court conducted a hearing on the motion for summary judgment (the "Motion") filed by Defendant Morad Neman ("Mr. Neman"). The Court took the matter under submission at the conclusion of the hearing. For the reasons set forth below, the Motion is granted and the Court will enter final judgment in Mr. Neman's favor. [1]

---

[1] The Court considered the following pleadings and papers in adjudicating this matter:
  1) First Amended Complaint for (1) Avoidance and Recovery of Fraudulent Transfers; (2) Avoidance and Recovery of Preferential Transfers; and (3) Unjust Enrichment (the "Complaint") [Doc. No. 68]
  2) Defendant Morad Neman's Notice of Motion for Summary Judgment [Doc. No. 93]
  3) Memorandum of Points and Authorities in Opposition to Defendant Morad Neman's Motion for Summary Judgment (the "Opposition") [Doc. No. 118]
      a) Declaration of Duane Kumagai (the "Kumagai Decl.") [Doc. No. 119]
      b) Evidentiary Objections in Response to Motion for Summary Judgment [Doc. No. 120]

## I. Facts and Summary of Pleadings

On August 29, 2016, the Court approved the sale of the estate's interest in this litigation to Defendants Morad Neman ("Mr. Neman") and MBN Real Estate, LLC ("MBN") for $1 million. Bankruptcy Doc. No. 130. After Mr. Neman failed to complete the purchase, backup bidder Accessories Mart, LLC purchased the litigation for $905,000 on October 20, 2016. Adv. Doc. No. 57. Accessories Mart subsequently assigned its interest in the litigation to JL AM Plus ("JLAMP"). On September 2, 2016, the Court entered a preliminary injunction, barring Mr. Neman and MBN Real Estate from transferring or encumbering the assets which are the subject of this litigation. Bankruptcy Doc. No. 138.

On November 22, 2016, JLAMP filed a First Amended Complaint for (1) Avoidance and Recovery of Fraudulent Transfers; (2) Avoidance and Recovery of Preferential Transfers; and (3) Unjust Enrichment (the "Complaint") [Adv. Doc. No. 68]. The Complaint's allegations are as follows:

1) Prior to commencing a voluntary Chapter 7 petition, Morad and Yaffa Javedanfar (the "Debtors") owned interests in (A) Boyd L.P. and Sky High LLC and (B) properties located at 310 East Boyd Street, Los Angeles, CA 90013 (the "Boyd Street Property"), 931 East Pico Boulevard, Los Angeles, CA 90021 (the "Pico Blvd. Property"), and 715 East 14th Street, Los Angeles, CA 90021 (the "14th Street Property") (collectively, the "Assets"). In or around December 2012, Debtors transferred their interests in Boyd LP and Sky High LLC to defendants Morad Neman and MBN Real Estate, LLC (collectively, the "Defendants"). On January 11, 2013, Debtors transferred their interests in the Boyd Street Property, the Pico Blvd. Property, and the 14th Street Property to the Defendants.
2) At the time of the transfers, Defendants knew of the Debtors' obligations to their creditors and knew that the Debtors were insolvent. The purpose of the transfers was to frustrate the rights of the Debtors' creditors.
3) There is a unity of interest between Mr. Neman and MBN, such that treatment of MBN as a distinct entity would permit an abuse of the corporate privilege and produce an inequitable result. Accordingly, Mr. Neman should be deemed to be the alter ego of MBN.

Based on the foregoing allegations, the Complaint seeks the following relief:
1) Avoidance of the transfers as constructively fraudulent, pursuant to §§544(b) and 548(a)(1)(B).
2) Avoidance of the transfers as preferences, pursuant to §547(b).
3) Restitution and disgorgement of the transferred Assets, and an award of punitive damages against the Defendants.
4) Imposition of a constructive trust upon the Assets and immediate turnover of the Assets.

**Mr. Neman's Motion for Summary Judgment**

Mr. Neman makes the following arguments and representations in support of his motion for summary judgment:

---

    c) Statement of Genuine Issues in Response to Motion for Summary Judgment [Doc. No. 121]
4) Defendant Morad Neman's Reply to Opposition of JL AM Plus, LLC to Motion for Summary Judgment (the "Reply") [Doc. No. 126]

MBN and Mr. Neman cannot be deemed to be each other's alter egos, because (1) Mr. Neman is only the manager of MBN and holds no membership interest in MBN[2] and (2) MBN is an LLC in good standing that pays taxes, maintains books and records, and has a bank account and business address.

Cal. Corp. Code §17158 provides: "No person who is a manager or officer or both a manager and officer of a limited liability company shall be personally liable under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the limited liability company, whether that liability or obligation arises in contract, tort, or otherwise, *solely by reason of being a manager* or officer or both a manager and officer of the limited liability company" (emphasis added). "[W]hereas managers of limited liability companies may not be held liable for the wrongful conduct of the companies *merely* because of the managers' status, they may nonetheless be held accountable under Corporations Code section 17158, subdivision (a) for their personal participation in tortious or criminal conduct, even when performing their duties as manager." *People v. Pac. Landmark*, 129 Cal. App. 4th 1203, 1213, 29 Cal. Rptr. 3d 193, 199 (2005).

The Complaint's fraudulent transfer causes of action sound in quasi-contract, not tort. *See In re Blanchard*, 547 B.R. 347, 353 (Bankr. C.D. Cal. 2016) ("A fraudulent transfer cause of action does not 'sound in tort'; it is quasi-contractual in nature."). Because the Complaint does not allege that Mr. Neman participated in tortious or criminal conduct, he cannot be held personally liable for MBN's actions solely because he is MBN's manager. Any agreements Mr. Neman made or actions he undertook with respect to MBN were undertaken solely in his capacity as MBN's manager.

Even if the Court were to find that Mr. Neman is potentially personally liable as MBN's manager, the Complaint's alter ego allegations still fail. To pierce the corporate veil, two requirements must be met: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300, 702 P.2d 601 (1985).

First, the Complaint fails to allege specific facts demonstrating a unity of interest between MBN and Mr. Neman. The Complaint's conclusory alter ego allegations are a nearly verbatim recitation of the factors that California courts consider when deciding whether to impose alter ego liability. There are no facts alleged showing that Mr. Neman was a "mere shell" through which MBN acted. There are no facts alleged showing that Mr. Neman controlled, dominated, managed, or operated MBN for his convenience or for the purpose of evading creditor liability. There are no facts alleged showing that MBN's and Mr. Neman's assets were co-mingled. JLAMP has alleged no such facts because there are none. MBN is an LLC in good standing that has a tax identification number, a bank account, and a business address. MBN pays federal and state taxes and maintains books and records.

Second, no inequitable result will flow from maintaining the corporate veil. The Complaint does not specifically allege how JLAMP will suffer injustice if defendant MBN is treated as the sole actor here. Instead, the Complaint contains only the conclusory allegation that not piercing

---

[2] MBN is owned by two members, the Neman Family Irrevocable Trust (the "Neman Family Trust") and the Yedidia Investment Defined Benefit Plan Trust (the "Yedidia Trust"). Decl. of Simon Neman, Ex. B (MBN Real Estate's operating agreement) [Doc. No. 93]. Mr. Neman is the trustee of the Neman Family Trust and the Yedidia Trust. *Id.*

the corporate veil would "permit an abuse of corporate privilege and produce an inequitable result." Complaint at ¶11.

**JLAMP's Opposition to Mr. Neman's Motion for Summary Judgment**

JLAMP makes the following arguments in opposition to Mr. Neman's motion for summary judgment:

First, the Motion should be denied because Mr. Neman can be held personally liable for conspiring with the Debtors to commit fraudulent transfers. *See, e.g., Qwest Commc'ns Corp. v. Weisz*, 278 F. Supp. 2d 1188, 1191 (S.D. Cal. 2003) (holding that the president of a corporation could be held liable for engaging in a conspiracy to violate the Uniform Fraudulent Transfer Act, even though the UFTA did not directly apply to the corporation). The Complaint sufficiently alleges that Mr. Neman is liable as a co-conspirator. *See* Complaint at ¶18 ("At the respective times of the … transfers …, Defendants knew of Debtors' obligations to their creditors, including JLAMP, and knew that Debtors were insolvent or that the particular transaction in question would render Debtors insolvent. Defendants schemed, conspired and acted in concert with Debtors to consummate the transfers in conscious disregard of the rights of such creditors.").

Triable issues of fact exist with respect to Mr. Neman's liability as a conspirator, including the following:
1) Mr. Neman formed MBN on November 8, 2012, for no apparent purpose other than to take ownership of the transferred Assets.
2) As trustee of the Neman Trust and Yedidia Trust, Mr. Neman owns 100% of MBN.
3) The transfers occurred while the Debtors were facing liability of $24 million under their personal guaranties.

Second, the Motion should be denied because Mr. Neman can be held personally liable for the fraudulent transfers since he benefited from those transfers. Cal. Civ. Code §3439.08(b) provides that judgment can be obtained against "the person for whose benefit the transfer was made." Here, Mr. Neman benefitted from the transfers since, as trustee of the Neman Trust and Yedidia Trust, he indirectly owns 100% of MBN.

Third, the Motion should be denied because whether Mr. Neman is the alter ego of MBN requires a trial on the merits. The only evidence offered by Mr. Neman in support of the Motion is the declaration of Simon Neman, MBN's general counsel. Conspicuously absent is any declaration from Mr. Neman. The declaration of Simon Neman must be excluded, because there is an insufficient foundation laid showing that Simon Neman has personal knowledge to testify with respect to Mr. Neman's relationship to MBN. The fact that Simon Neman is general counsel does not magically imbue him with personal knowledge of MBN's business affairs and record-keeping practices.

If the Motion is not denied, it should be continued to provide JLAMP additional time to conduct discovery. Mr. Neman filed the Motion on March 28, 2017, before he had responded to JLAMP's discovery. When Mr. Neman did respond to JLAMP's discovery, he did so with improper objections and refusals to answer. JLAMP has also encountered difficulties obtaining discovery from third parties—for example, JLAMP was unable to depose the Debtor who was suffering from health-related problems. With respect to motions for summary judgement, Civil Rule 56(d) provides that if the nonmoving party shows by "affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may defer

considering the motion or deny it." JLAMP's motion for an extension of the discovery cutoff date sufficiently demonstrates that JLAMP has not been able to obtain necessary discovery as a result of Defendants' stonewalling.

**Mr. Neman's Reply in Support of the Motion for Summary Judgment**

Mr. Neman makes the following arguments in reply to JLAMP's opposition:

First, the argument that Mr. Neman can be held personally liable as a co-conspirator is fatally flawed because it fails to acknowledge that fraudulent transfer actions are quasi-contractual, not tortious, in nature. With no underlying tort, there can be no liability for conspiracy. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11, 869 P.2d 454, 457 (1994) (internal citations omitted) ("Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. By participation in a civil conspiracy, a co-conspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy…. Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort.").

Second, no genuine issue of fact exists with respect to the allegation that Mr. Neman is the alter ego of MBN. Mr. Neman carried his initial burden of pointing to facts demonstrating that he is not the alter ego of MBN. The burden then shifted to JLAMP to set forth specific facts demonstrating that there is a genuine issue for trial regarding alter ego. JLAMP failed to do so. Instead, JLAMP's argument regarding alter ego consists entirely of (1) objections to the declaration of Simon Neman, (2) an argument that the transfers were fraudulent because MBN was formed shortly before the Debtor transferred assets to it, and (3) a request for more time for discovery to develop the alter ego theory.

JLAMP is not entitled to additional time to pursue discovery to develop its alter ego theory. The discovery JLAMP served in February 2017 upon Mr. Neman did not address alter ego issues. In addition, despite the fact that Mr. Neman and MBN have separate counsel, JLAMP repeatedly conflates the discovery responses of Mr. Neman with those of MBN.

Third, Mr. Neman cannot be held personally liable for the allegedly fraudulent transfers on the grounds that, as the trustee of the trusts that are the two members of MBN, he was the "person for whose benefit the transfer[s] w[ere]" made under Cal. Civ. Code §3439.08(b)(1). To hold Mr. Neman personally liable as the trustee of the trusts, JLAMP would need to pierce the trusts' veils to establish individual liability under an alter ego theory. JLAMP has cited no cases where a California court found that the trustee of a trust was personally liable under an alter ego theory. In addition, Cal. Prob. Code §18000 provides that "a trustee is not personally liable on a contract properly entered into in the trustee's fiduciary capacity in the course of administration of the trust."

The more serious problem with JLAMP's argument is that the Complaint does not allege a claim under Cal. Civ. Code §3439.08(b)(1). The Complaint alleges claims only under Cal. Civ. Code §3439.04 and 3439.07.

## II. Findings of Fact and Conclusions of Law
### A. Based Upon the Consent of the Parties, the Bankruptcy Court Has Authority to Enter Final Judgment with Respect to Mr. Neman

Because this action involves fraudulent transfer claims, the Court lacks authority under Article III of the Constitution to enter final judgment absent consent of the parties. *See Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 61–63 (9th Cir. 2012). JLAMP and Mr. Neman have consented to entry of final judgment by this Court; MBN, which is not a party to the instant Motion, has not.

Where some but not all parties have consented to entry of final judgment, the Bankruptcy Court may enter final judgment with respect to those parties who have given their consent. *See* O'Toole v. McTaggart (In re Trinsum Grp., Inc.), 467 B.R. 734, 742 (Bankr. S.D.N.Y. 2012) (holding that in a case with eleven defendants, the Bankruptcy Court could enter final judgment with respect to the seven defendants who had consented, and could prepare proposed findings of fact and conclusions of law for the district court's review with respect to the four defendants who had not consented). Here, the Court may enter final judgment as to Mr. Neman since both JLAMP and Mr. Neman have consented to the entry of final judgment. Although the action remains pending with respect to MBN, the Court finds, pursuant to Civil Rule 54(b), that there is no just reason to delay the entry of final judgment with respect to Mr. Neman.

### B. Mr. Neman is Entitled to Final Judgment in His Favor on All Claims Asserted in the Complaint

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Civil Rule 56 (made applicable to these proceedings by Bankruptcy Rule 7056). The moving party has the burden of establishing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is 'material' only if it might affect the outcome of the case[.]" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Civil Rule 56(e)). The court is "required to view all facts and draw all reasonable inferences in favor of the nonmoving party" when reviewing the Motion. *Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004).

1. JLAMP's Evidentiary Objections Are Overruled

The Court first addresses JLAMP's evidentiary objections to the declaration of Simon Neman. JLAMP argues that the declaration must be excluded because the declarant has not laid a sufficient foundation to show that he has personal knowledge of the relationship between Mr. Neman and MBN or the record-keeping practices of MBN. JLAMP also contends that the business records attached to the declaration are inadmissible as hearsay.

JLAMP's evidentiary objections are overruled. Simon Neman testifies that he is the general counsel of MBN and that he is "familiar with the transactions that occurred at MBN in 2012 and the general business practices of MBN." Simon Neman Decl. at ¶4 [Doc. No. 93]. This testimony

provides sufficient foundation for Simon Neman to testify as to (1) MBN's relationship with its manager, Mr. Neman; (2) MBN's record keeping practices; and (3) MBN's observance of corporate formalities. In addition, Simon Neman submitted a supplemental declaration further explaining his familiarity with MBN. Simon Neman's position as general counsel qualifies him to authenticate the various documents that are attached in support of the declaration. Having been properly authenticated, those documents (which include MBN's articles of organization, MBN's operating agreement, and MBN's statement of information) are not hearsay.

2. Mr. Neman is Not the Alter Ego of MBN

Mr. Neman is entitled to summary judgment in his favor with respect to the Complaint's alter-ego allegations. The Complaint's conclusory allegations do not include specific facts demonstrating that Mr. Neman is the alter ego of MBN. JLAMP's Opposition to the Motion does not furnish any facts that would bolster the alter-ego allegations that are insufficiently pleaded in the Complaint.

To establish liability under an alter ego theory, JLAMP must show that there is "(1) … such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300, 702 P.2d 601 (1985).

The Complaint recites the legal formulation for alter ego liability by alleging (1) that there exists "a unity of interest in ownership between each defendant and every other defendant," (2) that each "defendant was a mere shell, instrumentality and conduit through which every other defendant acted," and (3) that each defendant "controlled, dominated, managed and operated every other defendant and intermingled its assets with theirs." Complaint at ¶11. The Complaint is entirely lacking in *specific facts* to support these conclusory allegations. There are no specific facts showing a unity of interest between Mr. Neman and MBN: the Complaint does not allege facts showing how Mr. Neman used MBN as a mere shell or instrumentality; it does not allege facts showing how Mr. Neman controlled or dominated MBN; and it does not allege facts showing the extent to which Mr. Neman's assets were comingled with MBN's assets.

Nor does JLAMP supply, in its Opposition, facts with respect to alter ego sufficient to defeat the Motion. JLAMP shows that Mr. Neman is the trustee of the two trusts who own 100% of the membership interests in MBN. But JLAMP offers nothing to establish that Mr. Neman used the trusts to control or dominate MBN in a manner that would support disregarding MBN's separate legal existence. JLAMP shows that Mr. Neman formed MBN shortly before the Debtors transferred the Assets to MBN. This evidence goes to MBN's liability on JLAMP's fraudulent transfer claims, not to whether Mr. Neman should be deemed MBN's alter ego.

By contrast, Mr. Neman has presented facts showing that there is no genuine dispute that Mr. Neman cannot be held liable as MBN's alter ego. Based on the evidence submitted by Mr. Neman, the Court finds that MBN is a limited liability company in good standing that has a bank account and business address and that pays taxes and maintains appropriate books and records. Mr. Neman does not hold himself out as personally liable for MBN's debts, does not treat MNB's assets as his own, and does not commingle MBN's corporate funds with his personal assets. Accordingly, there is no basis for piercing MBN's corporate veil, and Mr. Neman is entitled to judgment in his favor with respect to JLAMP's alter ego allegations.

JLAMP argues that it should be entitled to conduct additional discovery so that it may obtain evidence to shore up the Complaint's alter-ego allegations and file a Second Amended

Complaint. The Court declines to grant JLAMP leave to amend the Complaint. Civil Rule 15(a)(2) provides that the "court should freely give leave [to amend] when justice so requires." However, the liberality with which leave to amend is generally granted "is subject to several limitations. Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

    Here, leave to amend is subject to the *Ascon Properties* limitation. JLAMP failed to allege sufficient facts to support its alter ego allegations in its Complaint—which has already been amended once—and failed to proffer any such facts in its opposition to Mr. Neman's motion for summary judgment. JLAMP's position is that it should be entitled to conduct additional discovery in order to obtain the facts sufficient to support its alter ego theory. Discovery is not a fishing expedition in which parties are permitted to hunt for any conceivable set of facts that might support a legal theory supported only by threadbare allegations lacking the required specificity. As the Supreme Court has explained, to "unlock the doors to discovery," a complaint must allege specific facts allowing the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For its request for leave to amend to have been made in good faith, JLAMP was required to provide to the Court either evidence that Mr. Neman is MBN's alter ego, or at the very least allege specific facts plausibly supporting alter ego liability.

    Leave to amend would also cause undue delay. Having been filed on July 9, 2015, this action has been pending for almost two years. If JLAMP had any facts to support its alter ego theory, it should have alleged those facts by this point. The Complaint has already been amended once, making the Court's "discretion to deny leave to amend … particularly broad." *Ascon*, 866 F.2d at 1160. Amendment at this juncture would cause undue prejudice to Mr. Neman, who has already been required to devote substantial time and expense to this litigation.

    With respect to the second prong necessary to establish alter ego liability—that preserving MBN's corporate veil will produce an inequitable result—JLAMP has failed to carry its burden. MBN, which holds title to the Assets, will remain a defendant in this action even after the dismissal of Mr. Neman. Thus, Mr. Neman's dismissal will not bar JLAMP from recovering the Assets, should it succeed in proving its allegations.

3. Mr. Neman is Not Personally Liable for Allegedly Conspiring with the Debtors to Transfer the Assets

    There is no merit to JLAMP's contention that Mr. Neman can be held personally liable for allegedly conspiring with the Debtors to fraudulently transfer the Assets. First, the Complaint's allegations are far too conclusory and threadbare to support liability on a co-conspirator theory. The Complaint alleges only that "Defendants schemed, conspired and acted in concert with Debtors to consummate the transfers in conscious disregard of the rights of such creditors." Complaint at ¶18. There are no specific allegations showing how this conspiracy was conceived or orchestrated. For example, there are no allegations showing that Mr. Neman was motivated to participate in the alleged conspiracy because he had a business or personal relationship with the Debtors. These deficiencies in the Complaint were not cured through JLAMP's Opposition, which failed to supply sufficient facts in support of JLAMP's conspiracy allegations.

    Second, as a matter of law, Mr. Neman cannot be held liable for conspiring to fraudulently transfer assets. Conspiracy is not an independent cause of action; "[i]t must be activated by the

commission of an actual tort." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11, 869 P.2d 454, 457 (1994). The fraudulent transfer claims in the Complaint sound in quasi-contract, not tort. *See, e.g., In re Blanchard*, 547 B.R. 347, 353 (Bankr. C.D. Cal. 2016) ("A fraudulent transfer cause of action does not 'sound in tort'; it is quasi-contractual in nature"); *United States v. Neidorf*, 522 F.2d 916, 917–18 (9th Cir. 1975) (holding that a fraudulent conveyance action does not sound in tort). Since fraudulently transferring assets is not tortious, co-conspirator liability cannot attach to Mr. Neman.

It is true that in *Qwest Commc'ns Corp. v. Weisz*, 278 F. Supp. 2d 1188, 1191 (S.D. Cal. 2003), the court held that a corporation's president could be held liable for conspiring to fraudulently transfer assets. The *Quest* court assumed, without analysis, that a fraudulent transfer claim sounds in tort. *Qwest* is contrary to the vast weight of authority, which holds that fraudulent transfer claims are not based in tort. *See, e.g., Stern v. Marshall*, 564 U.S. 462, 492, 131 S. Ct. 2594, 2614, 180 L. Ed. 2d 475 (2011) (stating that fraudulent conveyance actions are "quintessentially suits at common law that … resemble state law contract claims"); *Diamond v. Friedman (In re Century City Doctors Hosp.)., LLC*, 466 B.R. 1, 9–10 (Bankr. C.D. Cal. 2012) (holding that "a fraudulent transfer claim in bankruptcy is not one based in tort"); *Branch v. F.D.I.C.,* 825 F.Supp. 384, 419–20 (D. Mass. 1993) (finding a fraudulent conveyance claim not to be a tort claim for purposes of the Federal Tort Claims Act); *Forum Ins. Co. v. Devere Ltd.*, 151 F. Supp. 2d 1145, 1148–49 (C.D. Cal. 2001), *aff'd sub nom. Forum Ins. Co. v. Comparet*, 62 F. App'x 151 (9th Cir. 2003) (holding that California's UFTA did not afford a conspiracy remedy against an accountant who allegedly assisted in the concealment of assets). The Court declines to follow *Quest*.

Third, Mr. Neman is not personally liable for the allegedly fraudulent transfers on the grounds that, as trustee of the Neman Trust and Yedidia Trust, he is the "entity for whose benefit such transfer was made." *See* §550(a)(1). Mr. Neman is not a member of MBN; it is the Neman Trust and Yedidia Trust who are members of MBN. "[A] trustee is not personally liable on a contract properly entered into in the trustee's fiduciary capacity in the course of administration of the trust." Cal. Prob. Code §18000. JLAMP has alleged no facts showing that the corporate veils of the Neman Trust and Yedidia Trust should be pierced so that Mr. Neman may be personally liable.

## III. Conclusion

Based on the foregoing, the Court GRANTS the Motion and will enter final judgment in favor of Mr. Neman as to all claims asserted in the Complaint.

###

Date: May 25, 2017

Ernest M. Robles
United States Bankruptcy Judge