# EXHIBIT 3

JOHN S. PURCELL (SBN 158969)
ANDY S. KONG (SBN 243933)
DOUGLAS E. HEWLETT, JR. (293438)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Tel:  213.629.7400
Fax: 213.629.7401
Email: john.purcell@arentfox.com
       andy.kong@arentfox.com
       douglas.hewlett@arentfox.com

Attorneys for Real Party in Interest JL AM Plus, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| MORAD JAVEDANFAR and YAFFA JAVEDANFAR, <br><br> Debtors, <br><br> TIMOTHY J. YOO, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF MORAD JAVEDANFAR and YAFFA JAVEDANFAR, <br><br> Plaintiff, <br> vs. <br><br> MORAD NEMAN and MBN REAL ESTATE INVESTMENTS, LLC, <br><br> Defendants. | Case No.  2:13-bk-27702-ER <br><br> Chapter 7 <br><br> Adv. No. 2:15-ap-01363-ER <br><br> **RULE 26 EXPERT DISCLOSURE FOR DAVID WALL** <br><br> First Am. Compl.:  November 22, 2016 <br> Discovery Cutoff:  February 28, 2018 <br> Pretrial Conference:  March 13, 2018 <br><br> Trial Date:  March 26, 2018 |

1        Pursuant to FRCP 26(a)(2), Plaintiff hereby attaches the expert declarations

2    and supporting documents for expert witness David Wall.  Mr. Wall has been

3    retained as a testifying expert witness in this matter.

4

5    Dated:  February 7, 2018          **ARENT FOX LLP**

6

7              By: _____

8              JOHN S. PURCELL
ANDY S. KONG

9              DOUGLAS E. HEWLETT, JR.

10             Attorneys for Real Party in Interest JL AM
Plus, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

<u>Expert Report of David Wall</u>
<u>Certified Public Accountant</u>

February 7, 2018

In re: Morad and Yaffa Javedanfar
Case No. 2:13-bk-27702-ER
Chapter 7

Adversary Case No: 2:15-ap-01363-ER

Timothy J. Yoo, Chapter 7 Trustee for the Bankruptcy Estate of
Morad Javedanfar and Yaffa Javedanfar,
Plaintiff,

v.

Morad Neman and MBN Real Estate Investments, LLC,
Defendants.

Introduction

I am a Certified Public Accountant and Certified Fraud Examiner; I hold additional licensure from the State of California, as a private investigator, and as an attorney at law. I have been employed as a financial investigator in Southern California for 30 years, primarily in financial litigation pending before the State and Federal Courts. I am currently employed as a Principal at CliftonLarsonAllen LLP (CLA), a national public accounting firm with offices in Los Angeles, Pasadena, Glendora, and Ontario. My current curriculum vitae and testimony history is attached at Exhibit A. Our current fee schedule is attached at Exhibit B. My time is $395 per hour on or off the stand.

I was originally retained in this matter by the Kumagai Law Group, on November 21, 2016. At that time my firm was known as Vicenti Lloyd & Stutzman LLP (VLS). My original engagement was terminated by Kumagai Law Group on May 10, 2017. Thereafter VLS was merged into CLA on June 1, 2017.

I was re-retained in this matter by Arent Fox LLP, on October 16, 2017. I was assigned to provide financial analysis and testimony in reference to Morad Javedanfar and Yaffa Javedanfar ("Javedanfar" or "Debtor")[1]. In particular, the engagement was in reference to transfers of property from Javedanfar in favor of MBN Real Estate Investments LLC ("MBN")[2]. I received the first batch of financial documents in this matter on or about April 11, 2017 and continued to receive documents for analysis through February 2, 2018.

This report is truthful and accurate based on the information and evidence I have been provided through the current date (with the exception of certain documents received on February 2, 2018, and described below). This report is subject to amendment based on new information and/or documentation that may be reviewed between this date and the time of trial.

---

[1] The property interests and transfers referenced herein were conducted in the name of Morad Javedanfar. On the basis of California's pro-community presumption, these interests would be presumed to be the property of the marital community of Morad and Yaffa Javedanfar. Herein I use the term "Javedanfar" or "Debtor" to refer to Morad Javedanfar, whether alone or on behalf of his marital community.

[2] The relevant purchase and sale agreements for two of the transfers describe the transferee as "Morad B. Neman, as Manager of MBN Real Estate Investments, LLC." The Court has previously ruled on summary judgment that Morad B. Neman was not the recipient any transfers in this matter, and that MBN was the recipient of all relevant transfers.

<u>Summary of Opinions</u>

In analyzing the records available to me in this matter, I find as follows:

*Opinions related to transfer of membership interest in Sky High LLC Investments Co. LLC:*

- <u>Actual Intent.</u> The transfer of a 20% ownership in Sky High Investments Company LLC ("Sky High LLC") from Javedanfar to MBN on or about November 9, 2012 wears a number of "badges of fraud" as defined by California Civil Code §3439.04(b); Theses badges of fraud constitute impressive evidence upon which the trier of fact may find that Javedanfar made the transfer with the actual intent to hinder, delay, or defraud one or more of his creditors.

- <u>Constructive Intent.</u> Javedanfar was insolvent on or about November 9, 2012; He did not receive reasonably equivalent value in exchange for his transfer of a 20% ownership in Sky High LLC to MBN on or about that date.

*Opinions related to transfer of partnership interest in 310 E. Boyd St. Partnership LP:*

- <u>Actual Intent.</u> The transfer of a 19.8% ownership in 310 E. Boyd St. Partnership LP (Boyd LP) from Javedanfar to MBN on or about November 9, 2012 wears a number of "badges of fraud" as defined by California Civil Code §3439.04(b); Theses badges of fraud constitute impressive evidence upon which the trier of fact may find that Javedanfar made the transfer with the actual intent to hinder, delay, or defraud one or more of his creditors.

- <u>Constructive Intent.</u> Javedanfar was insolvent on or about November 9, 2012; He did not receive reasonably equivalent value in exchange for his transfer of a 19.8% ownership in Boyd LP to MBN on or about that date.

*Opinions related to the purported transfer of fee interest in 715 East 14th Street:*

Javedanfar acquired a fractional 19.8% fee interest in this property on July 17, 2007.

- <u>Failure of Transfer Deed.</u> Javedanfar caused a grant deed to be recorded on or about November 13, 2012, purporting to transfer his interest in realty commonly known as 715 East 14th Street (the "14th Street Property") to MBN. Kenneth Dzien, a title expert, will issue an opinion in this matter indicating that "title to the fractional 19.80% interest [is still] vested in Morad Javedanfar…" In essence, Dzien will testify that the relevant grant deed is defective and that Javedanfar continues to own a 19.80% fee interest in this property.

To the extent the Court determines that the relevant grant deed did affect a transfer of the interest, I find as follows:

- <u>Actual Intent.</u> The transfer of a 19.8% fee interest in the 14th Street Property from Javedanfar to MBN on or about November 13, 2012 wears a number of "badges of fraud" as defined by California Civil Code §3439.04(b); Theses badges of fraud constitute impressive evidence upon which the trier of fact may find that Javedanfar made the transfer with the actual intent to hinder, delay, or defraud one or more of his creditors. Notably Javedanfar failed to disclose this transfer to the Bankruptcy Court during the administration of his Chapter 7 proceedings.

▪    <u>Constructive Intent.</u> Javedanfar was insolvent on or about November 13, 2012; he did not receive reasonably equivalent value in exchange for his transfer of a 19.8% fee interest in the 14th Street Property to MBN on or about that date.

### Documents Reviewed

In compiling the findings and conclusions of this report, with the assistance of professional accounting staff under my direct supervision, I have reviewed the following documentation: Refer to Document Log attached at Exhibit C. The totality of the information referenced in the Document Log is sometimes referred to as the "Data Set."

Despite numerous requests we have not been timely provided with certain financial data, which is the subject of pending motions to compel, along with additional information and documentation. Upon receipt and review of additional documents and information, we may amend this report or issue new reports arising from such additional data.

### Additional Documentation

We received an additional batch of documents in this matter on February 2, 2018. As of the time of this writing these additional documents have not been examined or analyzed because of their late receipt. This additional documentation is described at Exhibit D.

/ / /

<u>Procedure</u>

To analyze the available documentation and other information and to prepare this report, I performed the following procedures with the assistance of professional accounting staff under my direct supervision:

A.    Examined and analyzed financial statements and other financial records of Sky High LLC and Boyd LP.

B.    Examined and analyzed financial records of Israeli Discount Bank;

C.    Examined and analyzed financial records of Wells Fargo Bank;

D.    Examined and analyzed additional documentation as referenced at Exhibit C;

E.    Conducted research of publicly available real property records maintained by the Los Angeles County Recorder, in connection with realty commonly known as 921, 931, and 937 East Pico Boulevard; 310 East Boyd Street; and 715 East 14th Street;

F.    Obtained certified documentation of relevant recorders documents;

G.    Conducted research of publicly available litigation records maintained by the Los Angeles County Superior Court, in connection with cases brought by Wells Fargo Bank, Eliza and Manouchehr Fatirian, and Pouneh Hanasabzadeh against Javedanfar;

H.    Obtained certified documentation of relevant court records;

I.    Researched various filings and schedules in the instant bankruptcy case, no. Case No. 2:13-bk-27702-ER, on Pacer;

J.    Reviewed expert report of Kenneth Dzien;

K.    Participated in telephonic discussions with John Purcell of Arent Fox LLP with reference to: anticipated expert testimony from real estate appraiser in relation to real property located at 921, 931, and 937 East Pico Boulevard, 310 East Boyd Street, and 715 East 14th Street; as well as valuation expert in reference to Javedanfar's minority interests in Sky High LLC and Boyd LP.

/ / /

Background

East West Bank commenced a litigation against Javedanfar and others in Los Angeles County Superior Court on January 12, 2010. Accessories Mart LLC acquired the rights of East West Bank in the litigation, and ultimately obtained a judgment against Javedanfar and others in the amount of approximately $25 million. Javedanfar had a number of other debts in arrears and filed the instant Chapter 7 petition on July 11, 2013. Timothy Yoo, trustee.

Prior to filing bankruptcy, Javedanfar was the owner of the following interests (among others):

1.      A 20% membership interest in Sky High LLC, a California limited liability company. [Sky High LLC in turn is the owner of commercial real property commonly known as 921, 931, and 937 East Pico Boulevard, in the City of Los Angeles.]

2.      A 19.8% partnership interest in Boyd LP, a California limited partnership. [Boyd LP in turn is the owner of commercial real property commonly known as 310 East Boyd Street, in the City of Los Angeles.]

3.      A 19.8% fractional fee interest in certain commercial real property commonly described as 715 East 14th Street, Los Angeles, CA.

The above interests were transferred to MBN within the year prior to the filing of the bankruptcy petition. The transfers of the interests in Sky High LLC and Boyd LP were disclosed by Javedanfar in his Statement of Financial Affairs. However Javedanfar failed to disclose the transfer of the fractional fee interest in the 14th Street property.

Trustee Timothy J. Yoo initiated the instant adversarial proceeding on July 9, 2015, for avoidance of the above transfers and recovery of the above interests by the estate. JL AM Plus LLC ("JLAM") acquired the rights of the Trustee in this litigation on or about November 21, 2016. JLAM now operates as successor-in-interest to the Trustee.

/ / /

Assumptions

My findings and opinions in this matter are based on a number of assumptions, as follows:

A.    *Assumptions related to 921, 931, and 937 East Pico:*

- Sky High Investments Company LLC owns the realty commonly described as 921, 931, and 937 East Pico Boulevard.
- This realty had an appraised value of approximately $13.55 million, on or about 11/09/12.
- This realty consists of two tax parcels: 5132-013-026 and 5132-013-027.
- The legal description of this realty is identified at Exhibit E, Page 3.
- Sky High LLC took title to this property on 05/15/02, per instrument no. 02-1123014. Certified copy[3] attached at Exhibit E.
- Sky High LLC has never relinquished title to this realty.
- Javedanfar never owned any interest in this realty.
- The deed recorded 01/11/13 as instrument no. 2013-0056320 is a "wild deed", of no legal effect on the title to the realty. Certified copy attached at Exhibit F.
- Appropriate discovery has been undertaken in this matter to establish that there are no unrecorded deeds affecting Sky High LLC's ownership of this realty for the purposes of these proceedings.


B.    *Assumptions related to 310 East Boyd Street:*

- 310 E. Boyd St. Partnership LP owns the realty commonly described as 310 East Boyd Street.
- This realty had an appraised value of approximately $3.25 million, on or about 11/09/12.
- This realty consists of tax parcel: 5148-005-003.
- The legal description of this realty is identified at Exhibit G, Page 2.
- Boyd LP took title to this property on 10/20/00, per instrument no. 00-1643809. Certified copy attached at Exhibit G.
- Boyd LP has never relinquished title to this realty.
- Javedanfar never owned any interest in this realty.
- The deed recorded 01/11/13 as instrument no. 2013-0056322 is a "wild deed", of no legal effect on the title to the realty. Certified copy attached at Exhibit H.
- Appropriate discovery has been undertaken in this matter to establish that there are no unrecorded deeds affecting Boyd LP's ownership of this realty, for the purposes of these proceedings.


C.    *Assumptions related to 715 East 14th Street:*

- Javedanfar took title to a 19.80% fee interest in this property on 07/17/07, per instrument no. 2007-1689560. Certified copy attached at Exhibit J.
- This realty had an appraised value of approximately $1.85 million, on or about 11/13/12.

---

[3] We have obtained certified copies of all documents referenced herein from the Los Angeles County Recorder and the Los Angeles County Superior Court. We attach as exhibits to this report duplicates of our certified copies. The original certified documents are available for submission at the time of trial of this matter.

- This realty consists of tax parcel: 5132-019-047.
- This realty was previously assigned three tax parcel numbers: 5132-019-002, 5132-019-003, and 5132-019-004; these were joined into one tax parcel on 09/10/12. Refer to Exhibit I.
- The legal description of this realty is identified at Exhibit J, Page 4.
- Javedanfar purported to transfer his interest in this property to MBN on 11/13/12, per grant deed no. 2013-0056321, recorded 01/11/13. Exhibit K.
- The documentary transfer tax paid on this transfer was zero, reflecting consideration of zero.
- This deed bears a legend stating, "This conveyance is to secure a debt."

Based on conversations with counsel, review of reports of other experts, and review of authenticated documentation, I believe the above assumptions will be established by admissible evidence, stipulation of the parties, or judicial notice.

/ / /

Detailed Findings

Debtor was the owner of a 20% membership interest in Sky High LLC. On or about November 9, 2012 he transferred his interest to "Morad B. Neman, as Manager of MBN Real Estate Investments LLC," pursuant to an "Agreement for Purchase and Sale of Limited Liability Company Membership Interests." Copy attached at Exhibit L. The consideration received by Debtor is described as: "Buyer shall assume Seller's obligations to pay his prorata share of the outstanding expenses of the limited partners of the Membership."

Debtor was the owner of a 19.8% membership interest in Boyd LP. On or about November 9, 2012 he transferred his interest to "Morad B. Neman, as Manager of MBN Real Estate Investments LLC," pursuant to an "Agreement for Purchase and Sale of Limited Liability Company Membership Interests." Copy attached at Exhibit M. The consideration received by Debtor is described as: "Buyer shall assume Seller's obligations to pay his prorata share of the outstanding expenses of the limited partners of the Partnership."

Debtor was the owner of a 19.8% fee interest in the 14th Street Property. On or about November 13, 2012, he transferred his interest to MBN, pursuant to a Grant Deed, instrument no. 2013-0056321. Copy attached at Exhibit F. According to the recorder's cover sheet, no transfer taxes were paid on this transfer, indicating the consideration paid was zero. [The recorder calculates a transfer tax a rate of $1.10 per $1,000 of consideration paid. A transfer tax of zero signifies zero consideration paid.] Additionally, this instrument bears a notation indicating that "This conveyance is to secure a debt, R & T 11921," indicating that the transfer is conditional, and that equitable ownership may be retained by the grantor.

Plaintiff alleges the three above transfers were in violation of the then-applicable Uniform Fraudulent Transfer Act (UFTA)[4], California Civil Code §§ 3439 et seq.

---

[4] The transfers analyzed in this report occurred in November of 2012, prior to California's adoption of the Uniform Voidable Transactions Act. Accordingly all references are to the prior Uniform Fraudulent Transfer Act.

A.    <u>Badges of Fraud</u>

Plaintiff may establish violation of UFTA by demonstrating that debtor made the transfers with the *actual intent* to hinder, delay, or defraud any creditor. The debtor's actual intent in making a transfer generally is known only to himself. In legal proceedings, however, intent is usually demonstrated through an analysis of the circumstances surrounding the transfer. Here Plaintiff's complaint alleges that the debtor made the three identified transfers with the actual intent to hinder, delay, or defraud one or more of his creditors.

California Civil Code §3439.04(b) sets out a number of factors for the Court's consideration in regard to the debtor's intent in relation to an allegedly fraudulent transfer. The trier of fact generally should consider the presence of one or more of these so-called "badges of fraud," and also should consider qualitative aspects of the transfer and the circumstances in which the transfer occurred.

In analyzing the evidential material before me within the context of the allegation of actual intent, I observe the following badges of fraud:

i.    <u>The transfer was to an insider.</u>

By the debtor's own admissions, the transfers of the Sky High LLC and Boyd LP interests were to an insider. On two separate occasions Javedanfar categorizes these transfers as transfers to an insider. See Debtor's Statement of Financial Affairs in the instant bankruptcy case, filed 07/25/13, at Docket #14, page 30; as well as Debtor's Statement of Financial Affairs-Amended, filed 03/06/14, at Docket #39, page 10. Excerpts attached at Exhibit N. Javedanfar's characterization is supported by corroborating evidence: Javedanfar and Morad Neman ("Neman") were partners together in a number of businesses, including Sky High LLC and Boyd LP. Moreover testimony at trial is expected to establish that Javedanfar and Neman have been close friends since their childhood in Iran.

ii.    <u>The debtor retained possession or control of the property.</u>

There is evidence to support the theory that Javedanfar still retains possession or control over the two interests in Sky High LLC and Boyd LP. Please refer to instrument no. 2014-0382187, recorded 04/15/14, attached at Exhibit Z. This is a quitclaim deed from MBN Real Estate Investments LLC (grantee) to Morad Javedanfar (grantor). It is signed by Morad Ben Neman, Manager of MBN. It was reviewed and processed by Commerce

Escrow, pursuant to escrow file no. 14-63395-RZ. Its recordation was requested by North American Title Company, pursuant to title order no. 1261803. The document states: "The grantors and grantees in this conveyance are comprised of the same parties who continue to hold the same proportionate interest in the property." This document operates as an admission by MBN that MBN and Javedanfar are one and the same, and that Javedanfar is the 100% owner of MBN.

Further I note that MBN was organized on November 8, 2012, the day before the transfer of the Sky High LLC and Boyd LP interests. See Docket no. 93-3 at page 5. As the purported owners of MBN were already owners in Sky High LLC and Boyd LP, the creation of this new entity served no valid business purpose. Indeed the creation of a new legal entity actually increases expenses, record keeping burdens, tax compliance burdens, and administrative overhead. The creation of this new shell entity is consistent with the theory that Javedanfar may still be in control of the subject interests, through some side deal or silent interest in MBN.

This theory is bolstered further by MBN's steadfast refusal to turn over its bank records and books of account. Based upon my education, experience, and specialized knowledge as a fraud examiner, I have found that a person who is in possession of exculpatory evidence will turn that material over promptly and without quarrel. MBN's refusal to turn over simple and readily available information that would resolve basic questions about the true ownership and control of MBN puts us on inquiry notice that the allegations of the complaint may be valid.

Finally this theory is supported by Neman's refusal to sit for a deposition under oath and answer basic questions about the inception, purpose, organization, management, and control of MBN. In my experience, deliberate evasion is often an indication of culpability.

iii.    <u>Before the transfer was made, the debtor had been sued.</u>

This transfer of the Sky High and Boyd LP interests occurred on 11/09/12; the transfer of the interest in the 14th Street Property occurred on 11/13/12. Contemporaneously the debtor was being sued for money due by Plaintiffs Eliza and Manouchehr Fatirian in Los Angeles

County Superior Court, per case no. BC466514. The matter was scheduled for trial on 10/29/12, eleven days prior to the transfer of the Sky High LLC and Boyd LP interests, and fifteen days prior to the transfer of the interest in the 14th Street Property. Although he had not defaulted in the matter, the Debtor failed to appear for trial, and the Court ruled in favor of the plaintiffs.

A certified copy of the docket sheet for the matter is attached at Exhibit O. The docket demonstrates a thoroughly litigated case, with the active participation of the debtor. It is probable Javedanfar knew a large judgment was due to be rendered against him imminently. Refer to minutes attached at Exhibit P. The formal judgment was entered by the Superior Court against the Debtor in the amount of $985,000 on 11/19/12, ten days subsequent to the transfer of the Sky High LLC and Boyd LP interests, and six days subsequent to the transfer of the interest in the 14th Street Property. Refer to Exhibit Q. By the time the judgment was entered in this case, the debtor had transferred out significant assets, and rendered them unavailable for satisfaction of the money judgment.

Based upon my education, experience, and specialized knowledge in the field of fraud examination the above facts are highly indicative of actual intent.

During this same time frame the debtor was also being sued for money due by Plaintiff Pouneh Hanasabzadeh in Los Angeles County Superior Court, per case no. SC118558. The debtor was served with this lawsuit on or about 10/04/12. Complaint and proof of service attached at Exhibit R, Pages 1-9. Judgment in this matter was entered against the debtor on 01/18/13 in the amount of $490,699. Exhibit R at Page 10.

Also during this same time frame the debtor was being sued by Accessories Mart LLC in Los Angeles County Superior Court, per case no. SC106393. Judgment in this matter was entered against the debtor on 07/26/13 in the amount of $24,637,606. Exhibit S.

iv.    <u>The transfer was concealed.</u>

Debtor was under an obligation to disclose all property transferred (either absolutely or as security) within two years immediately preceding the commencement of the bankruptcy

case. I have closely examined all of the debtor's disclosure forms and statements, and amendments. The debtor failed to identify and disclose the transfer of his 19.8% fee interest in the 14th Street Property in favor of MBN on or about November 13, 2012. Refer to Exhibit N attached. This appears to be a deliberate attempt to conceal the transfer.

v.      The value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred.

*Sky High LLC:* The value of the asset transferred (the 20% interest in Sky High LLC) will be the subject of two other experts' testimonies, in addition to my own. A real estate appraiser will testify that the real property holdings of Sky High LLC were valued at $13,550,000 on or about 11/09/12, the date of transfer. Additionally, a valuation expert will testify that a minority member's interest should be discounted from the adjusted book value by approximately 25-30%, owing to a lack of control and a lack of marketability.

On the basis of the valuation expert Carsten Hoffman's testimony, the debtor's interest in Sky High LLC was valued in the range of $911,000-976,000. For the purposes of my analysis I use the midpoint of this range: $943,500.

*Boyd LP:* The value of the asset transferred (the 19.8% interest in Boyd LP) will be the subject of two other experts' testimonies, in addition to my own. A real estate appraiser will testify that the real property holdings of Boyd LP were valued at $3,200,000 on or about 11/09/12, the date of transfer. Additionally, a valuation expert will testify that a minority member's interest should be discounted from the adjusted book value by approximately 25-30%, owing to a lack of control and a lack of marketability.

On the basis of the valuation expert Carsten Hoffman's testimony, the debtor's interest in Boyd LP was valued in the range of $94,000-101,000. For the purposes of my analysis I use the midpoint of this range: $97,500.

*The 14th Street Property:* The value of the asset transferred (the 19.8% fee interest in the 14th Street property) will be the subject of one other expert's testimony, in addition to my

own. A real estate appraiser will testify that the 14th Street Property was valued at $1,850,000 on or about 11/13/12, the date of transfer.

Using financial data related to the 14th Street property dated 12/31/12 (the date closest to the date of transfer) as a basis, and using the above-described opinion, I recalculated the debtor's interest to be $242,548. A copy of my recalculated balance sheet, and notes related to the 14th Street property is attached at Exhibit X.

The above valuations are significantly corroborated by the Debtor's representations in his Statement of Financial Affairs dated 07/25/13 (Docket #14, page 30). In his statement, debtor attests that the combined value of the Sky High LLC and Boyd LP interests equaled $950,000. As noted above by my calculation the combined value of these two interests was approximately $1,041,000 [$943,500 for Sky High LLC + $97,500 for Boyd LP].

The above valuation is additionally corroborated by Neman and MBN's winning bid at auction to purchase the trustee's claims in the instant adversarial matter. Neman and MBN's bid was $1,000,000, and encompassed both the Sky High LLC and Boyd LP interests, and also Javedanfar's interest in the 14th Street Property. See Docket #130 at page 4. In making this bid, the highest bid, Neman and MBN expressed their estimation that the combined value of the Sky High LLC, Boyd LP, and the 14th Street Property interests equaled $1,000,000. As noted above, by my calculation the combined value of these three interests was approximately $1,283,548 [$943,500 for Sky High LLC + $97,500 for Boyd LP + $242,548 for the 14th Street Property].

Conversely, the value of the consideration received from MBN appears to be zero. For Sky High LLC and Boyd LP, the consideration is described as MBN's assumption of Debtor's obligations to pay his pro rata share of outstanding expenses. Based upon a review of the financial information before me, I find this consideration to be illusory and that the value of the consideration received was actually zero.

Each member of Sky High LLC did indeed have a balance owing in favor of Sky High LLC, as a result of a debt-financed distribution paid-out in 2009. However, no amount was

ever actually repaid by any of the members during any period, nor was any interest ever charged by Sky High LLC or paid by the members. Although such amounts are technically booked as "partner loans," in practice they are treated as a distribution from the member's capital account. When adjusted for the actual value of the real property, the debtor's capital account actually carried a positive balance of $958,304 at the time of transfer. See Exhibit U. Financial statements attached at Exhibit T.

The partners of Boyd LP had no such balance owing in favor of Boyd LP, for outstanding expenses or any other obligations. There were no amounts due from the partners, and no expenses paid out of pocket from the partners to Boyd LP at any time dating back to 2007. When adjusted for the actual value of the real property, the debtor's capital account actually carried a positive balance of $356,598 at the time of transfer. See Exhibit W. Financial statements attached at Exhibit V.

Further the value of the consideration received from MBN appears to be zero for the 14th Street property as well. According to the recorder's cover sheet, no transfer taxes were paid on this transfer. The recorder calculates a transfer tax a rate of $1.10 per $1,000 of consideration paid. A transfer tax of zero signifies zero consideration paid.

Finally I am advised that Neman has asserted the defense that he settled a note due from Javedanfar in exchange for the subject interests. In his Statement of Financial Affairs dated 07/25/13, at Exhibit N, Javedanfar attests that he transferred the subject interests to Neman in satisfaction of a $950,000 note due. Based upon my review of the evidential material there is absolutely no evidential support for this alleged note payable from Javedanfar to Neman. The Court has already determined that Neman was not the actual recipient of the transfer. Moreover, despite extensive discovery on this point, no party has been able to produce any IOU, note, promissory note, bill, statement, contract, open book, books of account, cancelled check, partial payment, interest payment, or any other evidential material whatsoever in support of the assertion that the transfers were made in exchange for cancellation of a $950,000 note due.

The existence of the alleged $950,000 note is further called into question by the Debtor's amended statement of financial affairs filed on 03/06/14. In this statement the value of the interests transferred has inexplicably been reduced from $950,000 to $30,000, and the balance now owing to Neman on the alleged promissory note has been arbitrarily raised from zero to $920,000. Notably, although he was allegedly owed $920,000, Neman never filed a proof of claim in the bankruptcy case.

Due to the wild and unexplained variations in regard to this alleged note payable to Neman, and the fact that he never bothered to submit a proof of claim, I conclude that the alleged note did not exist.

vi.    <u>The debtor was insolvent at the time the transfer was made.</u>

Based on a balance sheet approach, the debtor was unquestionably insolvent at the time of the referenced transfer. Refer to debtor's balance sheet attached at Exhibit Y, compiled from debtor's schedules, as well as additional financial data referenced therein. At the time of filing, the debtor listed approximately $31,900,000 in debt. The majority of this amount, about $26,500,000, arose from debt obligations that predated the transfers identified herein, and upon which litigation had already commenced at the time of transfer. These included:

- Case no. SC106393, filed 01/12/10, judgment entered 07/26/13 in the amount of $24,637,606;

- Case no. BC451116, filed 12/29/10, judgment entered 05/01/12 in the amount of $387,513;

- Case no. BC466514, filed 08/02/11, judgment entered 11/19/12 in the amount of $984,600;

- Case no. SC118558, filed 09/28/12, judgment entered 01/18/13 in the amount of $490,699;

The total of the debtor's assets was $2,886,000, based on the debtor's schedules, as adjusted upward pursuant to notes and calculations referenced at Exhibit Y. The debtor's debts exceed his assets by a factor of ten. There is no rational basis upon which to believe that the debtor was solvent at any time during the year prior to the filing of the petition in this matter.

Based on a cash-flow approach, a person is insolvent when they are unable to meet their debt obligations on time as they become due. The Debtor was not able to meet his obligations as they were coming due, at the time of the transfers referenced herein, as evidenced by the four pending Superior Court Cases, each of which sought to enforce matured debt obligations, and were pending at the time of the transfers.

B.   Constructive Intent

Plaintiff may establish violation of UFTA by demonstrating that debtor made the transfers with the *constructive intent* to hinder, delay, or defraud any creditor. California Civil Code §3439.05 states that a transfer is deemed fraudulent (as to a creditor whose claim arose before the transfer) if: 1) the debtor made the transfer without receiving reasonably equivalent value in exchange, and 2) the debtor was insolvent at that time of the transfer.

Please review analysis and findings above related to these issues beginning at Section "v" at the top of page 13, through the end of Section "vi" at the top of page 17 above. These observations and conclusions set out my opinions that the debtor was insolvent at the time of transfer, and that he did not receive reasonably value in exchange for the relevant transfers.

Conclusion

On the basis of the foregoing facts and observations, I conclude that the three identified transfers were in violation of the UFTA, either under a theory of actual intent or constructive intent, or both.

Respectfully submitted,

_____
David Wall, JD, CPA, CFE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Arent Fox LLP, Gas Company Tower, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013.

A true and correct copy of the foregoing document entitled (*specify*): **RULE 26 EXPERT DISCLOSURE FOR DAVID
WALL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and
**(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**2/7/18,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following
persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method
for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **February 7, 2018,** I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 2/7/2018 | Martha Mota | *(signature)* |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

AFDOCS/15921629.1

## 1. SERVED VIA EMAIL:

Stephen F Biegenzahn on behalf of Defendant MBN Real Estate Investments, LLC
SBiegenzahn@mbnlawyers.com

Douglas E Hewlett on behalf of Interested Party JL AM Plus, LLC
douglas.hewlett@arentfox.com

Andy Kong on behalf of Interested Party Interested Party
Kong.Andy@ArentFox.com

Andy Kong on behalf of Interested Party JL AM Plus, LLC
Kong.Andy@ArentFox.com

Duane Kumagai on behalf of Interested Party Interested Party
dkumagai@klgla.com, mshabpareh@klgla.com

Duane Kumagai on behalf of Plaintiff JL AM Plus, LLC
dkumagai@klgla.com, mshabpareh@klgla.com

John S Purcell on behalf of Interested Party JL AM Plus, LLC
john.purcell@arentfox.com

John S Purcell on behalf of Plaintiff JL AM Plus, LLC
john.purcell@arentfox.com

Yuriko M Shikai on behalf of Defendant Morad Neman
yshikai@neufeldmarks.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Timothy Yoo (TR)
tjytrustee@lnbyb.com, tyoo@ecf.epiqsystems.com; tjy@trustesolutions.net

## 2. REQUEST FOR SPECIAL NOTICE (VIA EMAIL):

**Timothy L. Neufeld**, on behalf of Morad Neman,
315 W. 9th Street, Suite 501
Los Angeles, CA 90015
TNeufeld@neufeldmarks.com